**SCHULTE et al., Appellees.**

v.

**STEINGRABER et al. Appellants.**

[Cite as *Schulte v. Steingraber* (2000), 136 Ohio App.3d 624.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–99–045.

Decided Feb. 18, 2000.

*Alan R. Mayberry,* Wood County Prosecuting Attorney, for appellees.

*Linda S. Holmes,* for appellants.

SHERCK, Judge.

This is an appeal from a judgment granted by the Perrysburg Municipal Court that ordered appellant, the Lake Township Board of Trustees, to reimburse appellees, two former trustees, for the costs of their out-of-pocket health insurance premiums. Because the reimbursement created an unconstitutional increase in compensation during the former trustees' terms of office, we reverse.

In 1997, Lake Township maintained a group health insurance plan for its employees and trustees. Two of the township's three trustees, appellees Lyle Schulte and Ronald D. Sims, declined health insurance through the township. Schulte had health insurance coverage under Medicare; Sims had health insurance coverage through his employer. Both trustees' terms were to expire on or about January 1, 1998.

In November 1997, Schulte learned that the Auditor of the State of Ohio had issued a January 4, 1996 bulletin that purportedly authorized townships to reimburse trustees and employees who voluntarily elected not to participate in a township's group health insurance plan because they were covered by comparable health insurance through other sources. Ohio Auditor Bull. 96–002. The State Auditor allowed reimbursement up to the average premium that the township paid for all persons covered by the group plan. The State Auditor's opinion acknowledged that it was in conflict with an earlier opinion issued by the Ohio Attorney General. In that opinion, the Ohio Attorney General recognized that R.C. 505.06 authorized a township to procure health insurance for qualified personnel. 1990 Ohio Atty.Gen.Ops. No. 90–053. However, the Attorney General determined that the statute did not authorize townships to reimburse personnel who voluntarily declined township health insurance because they were covered by a private source. *Id.*

At a regular Lake Township Trustees meeting on December 15, 1997, Schulte proposed a resolution to allow Lake Township employees to obtain reimbursement pursuant to the State Auditor's opinion. Appellee, trustee Kathy Steingraber, questioned whether the two other trustees could vote on a resolution that would benefit themselves. The resolution was tabled until a trustees' meeting on December 30, 1997.

Before that meeting, the trustees obtained an opinion from the Wood County Prosecuting Attorney. In that opinion, the prosecuting attorney advised:

"Although at odds with two Ohio Attorney General Opinions 1990 OAG 053 and 1992 OAG 068, the Auditor of State has held that where a township has elected to procure a group plan and an eligible official, clerk or employee has elected not to participate in the plan, the township may reimburse a township official or employee for his out-of-pocket premiums * * * for coverage separately obtained. However, reimbursement is allowed only where (1) the type of coverage is the same as that provided to the other trustees, clerk [,] and employees in the group plan and (2) reimbursement is *no greater than the average premium* the township is paying for all persons participating in its group plan." (Emphasis in original).

The opinion also advised:

"Additionally, if the township seeks to reimburse the clerk or trustees for the out-of-pocket premiums under the above conditions, it must do so by resolution. If the township is just initiating coverage for officials and employees, *the resolution must be passed prior to the beginning of the term of office for the trustees or clerk involved in order to avoid the Ohio Constitutional prohibition against in-term increases or decreases in compensation for state officials. **However, where insurance coverage is already provided as it is in Lake Township, the township need only pass a resolution which authorizes premium reimbursement for the same type of coverage.*** Furthermore, your resolution may authorize reimbursement retroactively to a date certain. * * *" (Emphasis added.)

The trustees reconsidered Schulte's resolution on December 30, 1997. Schulte and Sims voted in favor of the resolution; Steingraber opposed it. On or about December 30, 1997, Schulte requested reimbursement of $510 for Medicare premiums he paid in 1996 and $528 for 1997. Sims requested reimbursement of $950 for 1996 and $1,320 for 1997 for premiums he paid through his employer.

Two new trustees replaced Schulte and Sims shortly thereafter. At a trustees' meeting on January 5, 1998, the trustees rescinded the December 30, 1997 resolution regarding reimbursement of health insurance premiums.

The township never reimbursed Schulte or Sims. Both former trustees filed complaints in the small claims division of Perrysburg Municipal Court, requesting

reimbursement. The cases were consolidated and transferred to the regular docket of the municipal court.

The matter proceeded to trial. Appellees argued that the State Auditor's opinion expanded R.C. 505.60 to permit reimbursement of expenses. Appellees also contended that the new board of trustees inappropriately rescinded the resolution authorizing such reimbursement.

In contrast, appellant contended that, despite the State Auditor's opinion, R.C. 505.60 did not authorize reimbursement of out-of-pocket premium expenses despite the State Auditor's opinion. Further, appellant argued that appellees never established that their insurance was comparable.[1] Finally, appellant maintained that because the clerk did not certify that funds were available at the time the resolution was passed, the resolution was void under R.C. 5705.41(D)(1) and the new board properly rescinded the resolution.

The trial court entered judgment as follows:

"Plaintiffs are entitled to be reimbursed out of funds already budgeted for the year 1997 for medical benefits. In order for plaintiffs to be reimbursed they must submit a sufficiently detailed list of out of pocket expenses to the board of trustees. By this decision and order, the Lake Township Trustees are ordered to pay plaintiffs their out of pocket medical expenses in accord with resolution 189–97."

On appeal, appellant asserts the following assignments of error:

*"Assignment of Error No. I*

"Trial court [*sic* ] erred in interpreting O.R.C. 505.60 as permitting a township to pay the out–of–pocket premium expense for insurance obtained other than through the township by township officials and employees.

*"Assignment of Error No. II*

"The trial court erred in holding that a newly elected board of trustees could not rescind payment of out–of–pocket premium expense to township officials and employees where (1) the clerk had not attached a certificate of availability of funds, (2) the plaintiffs had not yet submitted documentation to show they were entitled to reimbursement and (3) the plaintiffs offer [*sic* ] no evidence that they had materially changed their position in justifiable reliance on the December 30th resolution."

Because we find that a portion of the Auditor of State's bulletin dealing with in-term raises specifically prohibited reimbursement of current trustees' out-of-

---

1. Eventually, the parties stipulated that appellees' insurance coverage was comparable to that provided by the township.

pocket health insurance premiums, we need not consider appellant's second assignment of error or resolve the conflict between the Auditor of State's bulletin and prior opinions of the Ohio Attorney General.

R.C. 505.60 authorizes a township to provide health insurance for its officers and employees:

"(A) The board of township trustees of any township may procure and pay all or any part of the cost of insurance policies that may provide benefits for hospitalization * * * for township officers and employees. If the board so procures any such insurance policies, the board shall provide uniform coverage under these policies for township officers and full-time township employees and their immediate dependents * * * from the funds or budgets from which the officers or employees are compensated for services * * *. Any township officer or employee may refuse to accept the insurance coverage without affecting the availability of such insurance coverage to other township officers and employees. * * *

" * * * *

"(C) If a board of township trustees fails to pay one or more premiums for a policy, contract, or plan of insurance or health care services authorized by division (A) of this section and the failure causes a lapse, cancellation, or other termination of coverage under the policy, contract, or plan, it may reimburse a township officer or employee for, or pay on behalf of the officer or employee, any expenses incurred that would have been covered under the policy, contract, or plan. * * * "

In 1992, the Ohio Attorney General determined that "a board of township trustees has no authority to procure hospital insurance for a township trustee * * * by paying for coverage under a plan offered by the trustee's private employer." 1992 Ohio Atty.Gen.Ops. No. 92–068. The Ohio Attorney General determined that while R.C. 505.60 authorizes the provision of health coverage, it does not authorize a board of township trustees "to pay for health coverage offered to a township by the trustee's private employer." That opinion also emphasized that under Section 20, Article II, Ohio Constitution, a township trustee cannot receive health insurance unless the township authorized purchasing insurance before the trustee's existing term of office began.

In contrast, the Auditor of State's Bulletin of January 4, 1996, allowed reimbursement of health insurance premiums provided by a trustee's private employer or other source:

"If a township elects to procure a group plan and a township trustee, clerk, or employee is denied coverage by the township's group health insurance carrier or is eligible but elects not to participate in the plan, it is the Auditor of State's

position that the township may obtain health insurance benefits for the trustee, clerk, or employee from a different health insurance provider as long as the coverage is the same as that provided to the other trustees, clerk, and employees in the group plan. 1990 Op. Att'y Gen. No. 90–9053. Alternatively, it is the Auditor of State's position that a township may reimburse a trustee, clerk, or employee who has been denied coverage under the township's group plan, or an eligible trustee, clerk or employee who elects not to participate in the plan, the out-of-pocket premiums for coverage obtained separately, Such reimbursement will be allowed up to the average premium the township is paying for all trustees, the clerk, and employees in the group plan. To the extent this position is in conflict with portions of 1990 Op. Att'y Gen. No. 90–053, the Auditor of State respectfully disagrees with those portions of the Opinion and declines to follow them."

Both parties and the trial court overlooked the Auditor's caution contained in a later portion of the bulletin concerning unlawful in-term compensation increases in violation of Section 20, Article II, Ohio Constitution. The Attorney General had also stressed the need to avoid such in-term increases in compensation. The Auditor specifically warned that any reimbursement procedure had to be in place before eligible township trustees took office.

"In-term increases in compensation violate Ohio Const. Art. II, Section 20. An in-term increase in the amount of insurance benefits a trustee receives is considered an in-term increase in compensation. 1981 Op. Att'y Gen. No. 81–099. However, an increase in the cost of coverage without a corresponding increase in benefits is not improper * * *. *Id.* Therefore any changes in group insurance benefits provided to township trustees that were intended to take effect after January 1, 1996 must have been passed before December 31, 1995 so that the new township trustees taking office may be eligible.

"If a township is currently reimbursing its trustees', clerk's or employees' out-of-pocket premiums and has never passed a resolution authorizing the practice, the Auditor of State's Office will require a resolution memorializing this past practice to be passed at the first meeting of township trustees after receipt of this bulletin. However, if no resolution is passed this could constitute an unlawful in-term increase subject to citations or findings for recovery in subsequent audits.

"*If the township currently has no reimbursement procedure or group insurance plan and would like to reimburse or procure a group plan after January 1, 1996,* the reimbursement resolution or group plan *cannot cover the trustees and clerk until at least January 1, 1998.* If given effect earlier, the resolution or group plan *would constitute an unlawful increase in compensation and the Auditor of State will issue a citation* for non-compliance for the townships [*sic* ] 1996 and 1997 audits. When passing a reimbursement resolution or procuring a

group plan for the *first time,* townships must stagger the effective dates of the plan or resolution so as to cover those trustees elected at different times. *Trustees and clerks winning election or re-election in November 1995 and taking office in January 1996 cannot be reimbursed or participate in a group plan until they are re-elected and take office again in January 2000. Trustees and clerks who took office in January 1994 cannot be reimbursed or participate in a group plan until they are re-elected and take office again in January 1998."* (Emphasis added.)

Although it is not clearly reflected in the record, we infer that both appellees held four-year terms pursuant to R.C. 505.01 beginning in 1994. Consequently, their terms began in 1994. As a result, they could not be reimbursed unless they took office again in 1998.

Accordingly, even by the terms of the Auditor of State's bulletin on which appellees relied, and which was submitted to the trial court as evidence, appellees were not permitted to seek reimbursement of health insurance unless they were reelected to office for the term beginning January 1998. Due to the limitation on in-term compensation increases, appellees were not entitled to reimbursement of health insurance premiums they paid privately for the years 1996 and 1997. Consequently, to prevent a miscarriage of justice, we take exceptional steps and apply the plain error doctrine. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus, to reverse the decision of the trial court.

Accordingly, appellant's first assignment of error is well taken to the extent that the trial court incorrectly ordered the township to reimburse the trustees' health insurance premiums for 1996 and 1997.

On consideration whereof, the court finds substantial justice was not done the party complaining, and the judgment of the Perrysburg Municipal Court is reversed and remanded. Appellees shall pay the costs of this appeal.

*Judgment reversed.*

MELVIN L. RESNICK, SHERCK and PIETRYKOWSKI, JJ., concur.